UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

RAMONE JONES,

                    Plaintiff,                      Case No. 2:11-cv-65

v.                                      Honorable Gordon J. Quist

PATRICIA L. CARUSO et al.,

                    Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint on immunity grounds and/or for failure to state a claim against Defendants Caruso, Armstrong, Sherry, Boynton, Mackie, Dunton, McDonald, Lemon, McKee, Hough, Porter, Michigan Department of Corrections and an (Unknown) Party. The Court will dismiss all of the claims against Defendant Jenkins, Beseau, Blamer and Sindles for failure to state a claim other than the First Amendment retaliation and access-to-the-courts claims. The Court will serve the First Amendment retaliation and access-to-the-courts claims against Defendants Jenkins, Beseau, Blamer and Sindles.

**Discussion**

     I.         Factual allegations

Plaintiff presently is incarcerated at the Woodland Center Correctional Facility but complains of events that occurred at Chippewa Correctional Facility (URF). In his *pro se* complaint, Plaintiff sues the Michigan Department of Corrections (MDOC), former MDOC Director Patricia L. Caruso, MDOC Grievance and Appeals Manager J. Armstrong, and the following URF employees: Warden Jeri-Ann Sherry, Assistant Deputy Warden T. Mackie, Administrative Assistant K. Dunton, Resident Unit Officers (Unknown) Jenkins and (Unknown) Blamer, Hearing Officers C. McKee and L. Hough, Sergeants (Unknown) Porter and (Unknown) Party, Resident Unit Manager G. Lemon, Inspector (Unknown) McDonald, J. Boynton, (Unknown) Beseau and (Unknown) Sindles.

Plaintiff alleges that Defendants wrongfully removed his legal documents on three occasions in violation of his constitutional rights, federal statutes and state law. On October 26, 2007, Defendant Jenkins seized Plaintiff's legal documents, books, photos, paper and magazines from Plaintiff's cell because they allegedly violated MDOC policy. Plaintiff claims that Jenkins examined all of his documents. When the items were returned, Plaintiff found that all of his legal documents, four pages of history notes, six photos and one magazine were missing. The next day, Defendant Porter gave Plaintiff a Notice of Intent to Conduct an Administrative Hearing. Although Plaintiff informed Porter that some of the documents were relevant to a lawsuit and his direct appeal, Porter did not assist Plaintiff.

Plaintiff submitted a grievance, Grievance No. URF-07-10-2475-19z, through the three-step grievance process regarding the wrongful removal of his property. At Step I, Defendants Mackie and Lemon denied Plaintiff's grievance. Plaintiff subsequently appealed the grievance to Step II. Plaintiff complains that Defendant Sherry, who is supposed to respond to all Step II

grievance appeals, apparently did not respond to Plaintiff's Step II grievance appeal. On January 7, 2008, Defendant Boynton denied Plaintiff's grievance appeal at Step II. Plaintiff then submitted a Step III grievance appeal to Defendant Caruso. Instead of Caruso, Defendant Armstrong denied Plaintiff's Step III grievance appeal on February 20, 2008.

On November 10, 2007, Defendant Hough conducted a hearing on the confiscated property. Apparently, some of Plaintiff's documents contained Uniform Commercial Code (UCC) materials. At the hearing, Plaintiff argued that the federal courts had enjoined the former MDOC Policy Directive 05.03.118, ¶ HH(23) (effective Jan. 1, 2006), that Hough was enforcing. Plaintiff presented Hough with the former MDOC Policy Directive and the order from the Eastern District of Michigan case that enjoined the MDOC from removing Uniform Commercial Code materials from prisoners. *See Jones v. Mich. Dep't of Corr. et al.,* Case No. 2:05-cv-72817, Order at 7, docket #46 (E.D. Mich. Sept. 28, 2006).[1] Plaintiff argues that not all of the documents were UCC documents and some of his documents were needed for his direct appeal. Plaintiff, however, agreed to the disposal of the magazine and photos. After reading the documents, Defendant Hough

---

[1] In *Jones*, Case No. 2:05-cv-72817, the district court issued a preliminary injunction to enjoin the defendants from enforcing the former prisoner mail policy, MDOC Policy Directive 05.03.118, ¶ HH(23). The former policy directive prohibited prisoners from receiving the following mail:

> Mail regarding actions that can be taken under the Uniform Commercial Code (UCC) which could be used to harass or threaten another individual, including the filing of a lien against the individual. This does not include legal materials which set forth the statute or provide a scholarly legal analysis of the UCC.

MICH. DEP'T OF CORR., POLICY DIRECTIVE 05.04.118, ¶ HH(23). The Sixth Circuit affirmed the issuance of the preliminary injunction in *Jones*, 569 F.3d at 278-79.

On September 14, 2009, the MDOC modified MDOC Policy Directive 05.03.118 to remove paragraph HH(23). The MDOC then added paragraphs MM(3) and (11) to the prisoner mail policy. Paragraph MM(3) of the prisoner mail policy prohibits mail advocating or promoting the violation of state or federal laws, such as "the filing of a false or fraudulent UCC financing statement in violation of MCL [§] 440.9501." MICH. DEP'T OF CORR., Policy Directive 05.03.118, ¶ MM(3). Moreover, paragraph MM(11) prohibits mail that encourages or provides instruction in the commission of a criminal activity, including the "filing of a false or fraudulent UCC lien." *Id*., at ¶ MM(11). As a result of the September 14, 2009 changes to the prisoner mail policy, the district court removed the preliminary injunction and dismissed the case. *See Jones,* Case No. 2:05-cv-72817, Order & J., docket ##113, 114 (E.D. Mich. Aug. 31, 2010).

determined that they were a threat to the order of the facility, and, thus, violated the former prisoner mail policy, MDOC Policy Directive 05.03.118 (effective Jan. 1, 2006).

Plaintiff filed a grievance, Grievance No. URF-07-11-2685-19z[2], to appeal Defendant Hough's decision.  At Step I, Defendants Lemon and Mackie denied Plaintiff's grievance.  Plaintiff then appealed the denial of his Step I grievance to Warden Sherry.  Defendant Sherry denied Plaintiff's Step II grievance appeal on January 8, 2008.  For Step III, Plaintiff appealed his grievance to Defendant Armstrong.  Defendant Armstrong denied Plaintiff's Step III grievance appeal on March 12, 2008.  Plaintiff also states that Defendant Caruso approved the denial of Plaintiff's Step III grievance appeal through Armstrong.

In January 2008, Plaintiff sent a letter to Defendant Sherry, requesting that Sherry return Plaintiff's legal documents.  On behalf of Warden Sherry, Defendant Dunton responded to Plaintiff's letter and denied Plaintiff's request.

On January 10, 2008, Plaintiff claims that Defendant Jenkins confiscated his legal documents again for violating MDOC Policy Directive 05.03.118 on prisoner mail.[3]  Later that day, an unknown officer delivered a Notice of Intent to Conduct an Administrative Hearing to Plaintiff for possessing contraband.  Plaintiff informed the unknown officer that Defendant Jenkins was purposely seizing Plaintiff's documents to interfere with his direct appeals.

Also on January 10, 2008, Defendants Jenkins, Blamer, Sindles and Beseau stopped Plaintiff while he was on his way to the law library.  The officers searched Plaintiff's documents.  Plaintiff was carrying legal papers for a civil complaint against Defendant Jenkins.  *See Jones v.*

---

[2] According to Exhibit E of Plaintiff's complaint, the proper identifier for this grievance is Grievance No. URF-07-11-2685-07A.  (*See* Ex. E to Compl., Page ID##45, 47, docket #1-1.)

[3] According to Plaintiff's exhibits, Defendant Jenkins searched Plaintiff's cell.  (*See* Ex. K, Page ID#70, docket #1-1.)

*Mich. Dep't of Corr. et al.*, No. 2:07-cv-239 (W.D. Mich.)  Apparently, Defendants noticed the lawsuit against Defendant Jenkins.  Defendants Jenkins, Blamer, Sindles and Beseau then refused to allow Plaintiff to go to the law library and confiscated his legal documents.

Later that day, Plaintiff filed Grievance No. URF-08-01-0088-19z against Defendants Jenkins, Blamer, Sindles and Beseau for refusing to allow him to go to the law library and for confiscating his legal documents.  Defendants Lemon and Mackie denied Plaintiff's grievance at Step I.  Plaintiff does not allege whether he appealed the denial of his grievance to Steps II and III.

Prior to the hearing, Defendant McDonald reviewed Plaintiff's legal documents outside of Plaintiff's presence.  McDonald concluded that the documents could be used for felonious activity and refused to return Plaintiff's legal documents.  On January 24, 2008, Defendant McKee held an administrative hearing on the documents that were confiscated on January 10, 2008.  McKee found that Plaintiff's documents could be used for illegal activity, and, thus, violated former MDOC Policy Directive 05.03.118.

On January 26, 2008, Plaintiff filed Grievance No. URF 08-01-0177-07A to appeal the decision of the January 24, 2008 hearing.  Defendants Lemon and Mackie subsequently denied Plaintiff's Step I grievance.  Plaintiff then appealed the grievance to Step II.  Defendant Boynton denied Plaintiff's Step II grievance appeal.  Plaintiff also sent a letter to Defendant Sherry regarding the disposal of his legal documents.  Plaintiff claims that Defendant Sherry approved the acts and decisions of the MDOC staff through Defendant Boynton's Step II response.  It is unknown whether Plaintiff appealed the denial of the grievance to Step III.

As to his seized documents, Plaintiff claims that he cannot duplicate his legal documents.  Plaintiff argues that he was prevented from filing his direct appeal to the Michigan Supreme Court by the filing deadline of February 21, 2008.  As a result, he was unable to file a

meaningful petition for writ of habeas corpus.  Plaintiff also alleges that he was prevented from appealing the Wayne County Circuit Court's decision in *Jones v. Mich. Parole Bd.*, Case No. 06-624825-CK, to the Michigan Court of Appeals.

Plaintiff argues that Defendants violated his First, Fourth, Fifth, Eighth, Ninth and Thirteenth Amendment rights, several articles of the United States Constitution, federal statutes and state law.  Plaintiff requests declaratory and injunctive relief and monetary damages.

II.     Immunity

A.     **Michigan Department of Corrections**

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections.  Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826  (6th Cir. 1993).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment.  *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. Mar. 12, 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000).  In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).  Therefore, the Court dismisses the Michigan Department of Corrections.

B.    **Hearing Officers**

Plaintiff sues Hearing Officers McKee and Hough.  Defendants are hearing officers

whose duties are set forth at MICH. COMP. LAWS § 791.251 through § 791.255.  Hearing officers are

required to be attorneys and are under the direction and supervision of a special hearing division in

the Michigan Department of Corrections.  *See* MICH. COMP. LAWS § 791.251(e)(6).  Their

adjudicatory functions are set out in the statute, and their decisions must be in writing and must

include findings of facts and, where appropriate, the sanction imposed.  *See* MICH. COMP. LAWS

§ 791.252(k).  There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for

judicial review in the Michigan courts.  *See* MICH. COMP. LAWS § 791.255(2).  Accordingly, the

Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative

law judges.  *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988).  As such, they are entitled to

absolute judicial immunity from inmates' § 1983 suits for damages based on actions taken in their

capacities as hearing officers.  *Id*.; *see also Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007);

*Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *Pierson v. Ray*, 386 U.S. 547, 554-55 (1967)

(judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights).

Therefore, I recommend that Plaintiff's claim for damages against Defendants McKee and Hough

be dismissed.

While judicial immunity prevents the recovery of damages, it does not bar

prospective judicial relief against Defendants McKee and Hough.  *Pulliem v. Allen*, 466 U.S. 522,

541-43 (1984); *Collyer v. Darling*, 98 F.3d 211, 222 (6th Cir. 1996).  The Court will address this

challenge in its discussion of Plaintiff's major misconduct claims, *infra*.

III.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice.").  The court must determine whether the complaint contains

"enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct.

at 1949.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at

1949 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not

'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under

28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a

right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify

the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff purports to bring actions under the following articles and amendments of

the United States Constitution:  Article I, Section 9; Article IV, Section 2, Clause 1; Article V,

Section 1, Clause 3; and the First, Fourth, Fifth, Eighth, Ninth and Thirteenth Amendments.  He also

alleges violations based on federal statutes.[4]  Based on the allegations in his complaint, the Court

can discern a Fourth Amendment claim based on unreasonable search and seizure, an Eighth

Amendment claim due to the removal of his property, Fourteenth Amendment claims based on the

denial of his grievances, misconduct tickets and the removal of his property, and First Amendment

claims for retaliation and for denial of access to the court.

### A.        **Supervisory Liability**

Plaintiff's only allegation against MDOC Director Caruso is that she approved

Defendant Armstrong's denial of two of Plaintiff's grievances.  Government officials may not be

held liable for the unconstitutional conduct of their subordinates under a theory of respondeat

superior or vicarious liability.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York*

*City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir.

2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.

*Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir.

2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon

the mere failure to act.  *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368

F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a

supervisor denied an administrative grievance or failed to act based upon information contained in

a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that

each Government-official defendant, through the official's own individual actions, has violated the

---

[4] Plaintiff argues that Defendants violated 18 U.S.C. §§ 4, 241, 242, 246, 1585 and 3571.  Plaintiff is essentially alleging that Defendants violated his constitutional rights because they failed to pursue a criminal prosecution of other Defendants.  A private citizen "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 63 (1986).  Simply put, Plaintiff cannot compel a criminal prosecution of Defendants because private citizens, whether or not they are incarcerated, cannot compel a criminal prosecution of another.  *See Diamond*, 476 U.S. at 64-65; *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Martin v. Koljonen*, No. 03-2169, 2004 WL 445720, at *1 (6th Cir. Mar. 9, 2004).  Therefore, Plaintiff fails to state a claim for violations of the federal statutes by Defendants.

Constitution." *Iqbal*, 129 S. Ct. at 1948.  Plaintiff has failed to allege that Defendant Caruso engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against her.

### B.     Due Process - Grievances

Plaintiff asserts that Defendants Lemon, Mackie, Boynton, Sherry and Armstrong wrongly denied his grievances at various steps of the three-step grievance process and Defendant Dunton failed to adequately respond to his January 10, 2008 letter.  Plaintiff's allegations against these Defendants only implicate the Due Process Clause of the Fourteenth Amendment.

Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure.  *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Furthermore, the Sixth Circuit has held that where a defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983.  *Shehee*, 199 F.3d at 300.  Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance.  *See id.* Plaintiff, therefore, fails to state a due process claim against Defendants Lemon, Mackie, Boynton, Sherry, Armstrong and Dunton.

C.      **Due Process - Major Misconduct Tickets**

Plaintiff complains that (1) he wrongly received major misconduct tickets from

Officer Jenkins on October 26, 2007 and January 10, 2008, (2) Inspector McDonald read Plaintiff's

legal documents outside his presence for the January 10, 2008 misconduct, concluded that the

documents could be used for felonious activity and refused to return his legal documents,

(3) Sergeants Porter and (Unknown) Party delivered the Notices of Intent to Conduct an

Administrative Hearing to Plaintiff for his major misconducts but did not assist Plaintiff in

recovering his legal documents, and (4) Hearing Officers McKee and Hough wrongly upheld the

major misconduct tickets.

Plaintiff's claim that the major misconduct tickets were "false" only implicates the

Due Process Clause of the Fourteenth Amendment.  A prisoner's ability to challenge a prison

misconduct conviction depends on whether the convictions implicate a liberty interest.  In the

seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain

minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-

time credits on account of alleged misbehavior.  The *Wolff* Court did not create a free-floating right

to process that attaches to all prison disciplinary proceedings; rather, the right to process arises only

when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture

of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for
> satisfactory behavior while in prison.  But here the State itself has not only provided
> a statutory right to good time but also specifies that it is to be forfeited only for
> serious misbehavior.  Nebraska may have the authority to create, or not, a right to a
> shortened prison sentence through the accumulation of credits for good behavior, and
> it is true that the Due Process Clause does not require a hearing "in every
> conceivable case of government impairment of private interest."  But the State
> having created the right to good time and itself recognizing that its deprivation is a
> sanction authorized for major misconduct, the prisoner's interest has real substance
> and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him
> to those minimum procedures appropriate under the circumstances and required by

the Due Process Clause to insure that the state-created right is not arbitrarily
abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss

of good-time credits, nor could he.  The Sixth Circuit has examined Michigan statutory law as it

relates to the creation and forfeiture of disciplinary credits[5] for prisoners convicted for crimes

occurring after April 1, 1987.  In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined

that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence.

Rather, it merely affects parole eligibility, which remains discretionary with the parole board.  481

F.3d at 440.  Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court

held that a misconduct citation in the Michigan prison system does not affect a prisoner's

constitutionally protected liberty interests, because it does not necessarily affect the length of

confinement.  355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196,

at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) ("plaintiff's disciplinary hearing and

major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"),

adopted as judgment of court, Order of Jan. 4, 2011.  In the absence of a demonstrated liberty

interest, plaintiff has no due-process claim.  *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th

Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner

may be able to raise a due-process challenge to prison misconduct convictions that result in a

significant, atypical deprivation.  *See Sandin v. Connor*, 515 U.S. 472 (1995).  Plaintiff has not

identified any deprivation, much less a significant and atypical deprivation, arising from his

convictions.  Because Plaintiff's misconduct did not result in either an extension of the duration of

---

[5] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that
abolished the former good-time system.  MICH. COMP. LAWS § 800.33(5).

his sentence or some other atypical hardship, his due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). Therefore, Plaintiff's due-process claims against Defendants Jenkins, McDonald, McKee, Hough, Porter and (Unknown) Party fail to state a claim.[6]

### D. Due Process - Removal of Property

Plaintiff complains that Defendants Jenkins, Blamer, Sindles and Beseau wrongly removed his property. Plaintiff's due-process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are

---

[6] In this case, Plaintiff sought declaratory relief, injunctive relief to stop arbitrarily enforcing MDOC Policy Directive 05.03.118 and monetary damages against URF Hearing Officers McKee and Hough. The Court previously found that McKee and Hough are immune from monetary damages. As to the request for declaratory and injunctive relief, Plaintiff has since been transferred to Woodland Center Correctional Facility. The Court finds, therefore, that Plaintiff's claims against McKee and Hough are moot. A prisoner's request for injunctive and declaratory relief from corrections officials is moot upon his transfer to a different facility. *See Cardinal v. Metrish,* 564 F.3d 794, 798-99 (6th Cir. 2009) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the

institution's Prisoner Benefit Fund for compensation.  MICH. DEP'T OF CORR., Policy Directive

04.07.112, ¶ B (effective Nov. 15, 2004).  Aggrieved prisoners may also submit claims for property

loss of less than $1,000 to the State Administrative Board.  MICH. COMP. LAWS § 600.6419; Policy

Directive, 04.07.112, ¶ B.  Alternatively, Michigan law authorizes actions in the Court of Claims

asserting tort or contract claims "against the state and any of its departments, commissions, boards,

institutions, arms, or agencies."  MICH. COMP. LAWS § 600.6419(1)(a).  The Sixth Circuit

specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of

property.  *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a state-court

action would not afford him complete relief for the deprivation, either negligent or intentional, of

his personal property.  Accordingly, Plaintiff fails to state a due-process claim against Defendants

Jenkins, Blamer, Sindles and Beseau for the removal of his property.

E.        **Fourth Amendment**

Plaintiff claims that Defendants violated his Fourth Amendment rights by removing

property from his cell and his person.  The Fourth Amendment protects "against unreasonable

searches and seizures." U.S. CONST. AM. IV.  The Fourth Amendment, however, applies only when

"the person invoking its protection can claim a justifiable, a reasonable or a legitimate expectation

of privacy that has been invaded by government action."  *Hudson v. Palmer*, 468 U.S. 517, 525

(1984).  In *Hudson*, 468 U.S. at 525-26, the Supreme Court held that prisoners have no reasonable

expectation of privacy in their cells, and upheld unannounced cell searches.  Further, in *Hudson*, the

Supreme Court noted that the same reasons which led it to conclude that the Fourth Amendment did

not prohibit searches of a prisoner's cell, applied with equal force to seizures.  *Id.* at 528 n.8.  The

Court stated that "[p]rison officials must be free to seize from cells any articles which, in their view,

disserve legitimate institutional interests."  *Id.*  Because "the Fourth Amendment's proscription against unreasonable searches [and seizures] is inapplicable in a prison cell," Plaintiff fails to state a claim against Defendants for the search and seizure of his property in his cell.  *Hudson*, 468 U.S. at 528 n.8.

Moreover, the Fourth Amendment does not prohibit the search of an inmate's person, so long as the search is reasonable in scope, manner, and location; is reasonably related to a valid penological goal; and is not performed for a wrongful purpose, such as to humiliate or degrade a prisoner.  *Bell v. Wolfish*, 441 U.S. 520, 558-59 (1970) (finding that visual body-cavity searches of pretrial detainees was reasonable); *Grummett v. Rushen*, 779 F.2d 491, 495-96 (9th Cir. 1985) (pat-down searches reasonable); *Madyun v. Franzen*, 704 F.2d 954, 957 (1983) (frisk search is reasonable).  Plaintiff's person and documents were searched while he was traveling to the law library.  The search of a prisoner's person and documents while heading to the law library is not "unreasonable" under the Fourth Amendment.  Moreover, Plaintiff's search was reasonably related to valid penological goals.  *Bell*, 441 U.S. at 523.  A "detention facility is a unique place fraught with serious security dangers.  Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence."  *Id.*  Finally, Plaintiff does not allege that the search was done to humiliate or degrade Plaintiff.  Because Plaintiff's property appeared to threaten the security of the prison, Defendants' search of Plaintiff's person and the seizure of Plaintiff's documents did not violate Plaintiff's Fourth Amendment rights.

F.      **Eighth Amendment**

To the extent Plaintiff is claiming that the confiscation of his property amounted to cruel and unusual punishment in violation of the Eighth Amendment, the claim has no merit.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving

- 15 -

standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions-of-confinement claims)).  At most, the taking of Plaintiff's documents was a temporary inconvenience.  Temporary inconveniences are not indicative of conditions that fall beneath the "minimal civilized measure of life's necessities" as measured by a contemporary standard of decency.  *Rhodes*, 452 U.S. at 347; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir.  2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).  Because Defendants' alleged conduct does not rise to the level of a serious risk to his health or safety, Plaintiff fails to state an Eighth Amendment claim.

G. **State Law**

Plaintiff claims that Defendants violated his constitutional rights under the Michigan

constitution, state statutes, common law and MDOC policy directives.  Section 1983 does not

provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995);

*Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Moreover, Defendants' alleged failure to

comply with an administrative rule or policy does not itself rise to the level of a constitutional

violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343,

347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v.*

*Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy

directive does not rise to the level of a constitutional violation because policy directive does not

create a protectable liberty interest).  Plaintiff's challenge to the enforcement of state law therefore

fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental

jurisdiction over state-law claims against Defendants whose federal claims have been dismissed, the

Court declines to exercise jurisdiction.  The Sixth Circuit routinely has held that, where a district

court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction

and the federal claims are dismissed prior to trial, the state-law claims should be dismissed without

reaching their merits.  *Landefeld v. Marion Gen. Hosp.*, *Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993);

*Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991).  Plaintiff's state-law

claims therefore will be dismissed without prejudice against all of the Defendants, except for the

state-law claims against Defendants Jenkins, Beseau, Blamer and Sindles in accordance with Section

H.

H. **Remaining Claims**

The Court concludes that Plaintiff's First Amendment retaliation claims and access-to-the-court claims against Defendants Jenkins, Beseau, Blamer and Sindles state a claim.  To the extent Plaintiff alleges state-law claims against Defendants Jenkins, Beseau, Blamer and Sindles, the Court will serve those state-law claims.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Caruso, Armstrong, Sherry, Boynton, Mackie, Dunton, McDonald, Lemon, McKee, Hough, Porter, (Unknown) Party and Michigan Department of Corrections will be dismissed on immunity grounds and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss all of the claims against Defendants Jenkins, Beseau, Blamer and Sindles pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), other than the First Amendment retaliation and access-to-the-courts claims.  The Court will serve the First Amendment retaliation and access-to-the-courts claims and state-law claims against Defendants Jenkins, Beseau, Blamer and Sindles.

An Order consistent with this Opinion will be entered.

Dated:  August 24, 2011                                    /s/ Gordon J. Quist
                                                            GORDON J. QUIST
                                                   UNITED STATES DISTRICT JUDGE