UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RAMONE JONES,

        Plaintiff,        Case No. 2:11-cv-65

v.        HON. GORDON J. QUIST

PATRICIA CARUSO, et. al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. On August 24, 2011, this Court ordered service of Plaintiff's complaint on Defendants Jeffrey Jenkins, Joseph Beseau, Donald Sindles, and Randall Blamer. On November 7, 2011, Defendants filed a motion for summary judgment on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response on November 21, 2011. Upon review, I recommend that Defendants' motion for summary judgment be granted.

Plaintiff alleges that Defendants wrongfully removed his legal documents on three occasions in violation of his constitutional rights, federal statutes and state law. On October 26, 2007, Defendant Jenkins seized Plaintiff's legal documents, books, photos, paper and magazines from Plaintiff's cell because they allegedly violated MDOC policy. Plaintiff claims that Jenkins examined all of his documents. When the items were returned, Plaintiff found that all of his legal documents, four pages of history notes, six photos and one magazine were missing. The next day, Defendant Porter gave Plaintiff a Notice of Intent to Conduct an Administrative Hearing. Although

Plaintiff informed Porter that some of the documents were relevant to a lawsuit and his direct appeal, Porter did not assist Plaintiff.

Plaintiff submitted a grievance, Grievance No. URF-07-10-2475-19z, through the three-step grievance process regarding the wrongful removal of his property. At Step I, Defendants Mackie and Lemon denied Plaintiff's grievance. Plaintiff subsequently appealed the grievance to Step II. Plaintiff complains that Defendant Sherry, who is supposed to respond to all Step II grievance appeals, apparently did not respond to Plaintiff's Step II grievance appeal. On January 7, 2008, Defendant Boynton denied Plaintiff's grievance appeal at Step II. Plaintiff then submitted a Step III grievance appeal to Defendant Caruso. Instead of Caruso, Defendant Armstrong denied Plaintiff's Step III grievance appeal on February 20, 2008.

On November 10, 2007, Defendant Hough conducted a hearing on the confiscated property. Apparently, some of Plaintiff's documents contained Uniform Commercial Code (UCC) materials. At the hearing, Plaintiff argued that the federal courts had enjoined the former MDOC Policy Directive 05.03.118, ¶ HH(23) (effective Jan. 1, 2006), that Hough was enforcing. Plaintiff presented Hough with the former MDOC Policy Directive and the order from the Eastern District of Michigan case that enjoined the MDOC from removing Uniform Commercial Code materials from prisoners. *See Jones v. Mich. Dep't of Corr. et al.,* Case No. 2:05-cv-72817, Order at 7, docket #46 (E.D. Mich. Sept. 28, 2006).[1] Plaintiff argues that not all of the documents were UCC

---

[1] In *Jones*, Case No. 2:05-cv-72817, the district court issued a preliminary injunction to enjoin the defendants from enforcing the former prisoner mail policy, MDOC Policy Directive 05.03.118, ¶ HH(23). The former policy directive prohibited prisoners from receiving the following mail:

> Mail regarding actions that can be taken under the Uniform Commercial Code (UCC) which could be used to harass or threaten another individual, including the filing of a lien against the individual. This does not include legal materials which set forth the statute or provide a scholarly legal analysis of the UCC.

documents and some of his documents were needed for his direct appeal.  Plaintiff, however, agreed to the disposal of the magazine and photos.  After reading the documents, Defendant Hough determined that they were a threat to the order of the facility, and, thus, violated the former prisoner mail policy, MDOC Policy Directive 05.03.118 (effective Jan. 1, 2006).

Plaintiff filed a grievance, Grievance No. URF-07-11-2685-19z,[2] to appeal Defendant Hough's decision.  At Step I, Defendants Lemon and Mackie denied Plaintiff's grievance.  Plaintiff then appealed the denial of his Step I grievance to Warden Sherry.  Defendant Sherry denied Plaintiff's Step II grievance appeal on January 8, 2008.  For Step III, Plaintiff appealed his grievance to Defendant Armstrong.  Defendant Armstrong denied Plaintiff's Step III grievance appeal on March 12, 2008.  Plaintiff also states that Defendant Caruso approved the denial of Plaintiff's Step III grievance appeal through Armstrong.

---

MICH. DEP'T OF CORR., POLICY DIRECTIVE 05.04.118, ¶ HH(23).  The Sixth Circuit affirmed the issuance of the preliminary injunction in *Jones*, 569 F.3d at 278-79.

On September 14, 2009, the MDOC modified MDOC Policy Directive 05.03.118 to remove paragraph HH(23).  The MDOC then added paragraphs MM(3) and (11) to the prisoner mail policy.  Paragraph MM(3) of the prisoner mail policy prohibits mail advocating or promoting the violation of state or federal laws, such as  "the filing of a false or fraudulent UCC financing statement in violation of MCL [§] 440.9501."  MICH. DEP'T OF CORR., Policy Directive 05.03.118, ¶ MM(3).  Moreover, paragraph MM(11) prohibits mail that encourages or provides instruction in the commission of a criminal activity, including the "filing of a false or fraudulent UCC lien."  *Id*., at ¶ MM(11).  As a result of the September 14, 2009, changes to the prisoner mail policy, the district court removed the preliminary injunction and dismissed the case.  *See Jones,* Case No. 2:05-cv-72817, Order & J., docket ##113, 114 (E.D. Mich. Aug. 31, 2010).

[2]According to Exhibit E of Plaintiff's complaint, the proper identifier for this grievance is Grievance No. URF-07-11-2685-07A.  (*See* Ex. E to Compl., Page ID##45, 47, docket #1-1.)

3

In January 2008, Plaintiff sent a letter to Defendant Sherry, requesting that Sherry return Plaintiff's legal documents. On behalf of Warden Sherry, Defendant Dunton responded to Plaintiff's letter and denied Plaintiff's request.

On January 10, 2008, Plaintiff claims that Defendant Jenkins confiscated his legal documents again for violating MDOC Policy Directive 05.03.118 on prisoner mail.[3] Later that day, an unknown officer delivered a Notice of Intent to Conduct an Administrative Hearing to Plaintiff for possessing contraband. Plaintiff informed the unknown officer that Defendant Jenkins was purposely seizing Plaintiff's documents to interfere with his direct appeals.

Also on January 10, 2008, Defendants Jenkins, Blamer, Sindles and Beseau stopped Plaintiff while he was on his way to the law library. The officers searched Plaintiff's documents. Plaintiff was carrying legal papers for a civil complaint against Defendant Jenkins. *See Jones v. Mich. Dep't of Corr. et al.*, No. 2:07-cv-239 (W.D. Mich.) Apparently, Defendants noticed the lawsuit against Defendant Jenkins. Defendants Jenkins, Blamer, Sindles and Beseau then refused to allow Plaintiff to go to the law library and confiscated his legal documents.

Later that day, Plaintiff filed Grievance No. URF-08-01-0088-19z against Defendants Jenkins, Blamer, Sindles and Beseau for refusing to allow him to go to the law library and for confiscating his legal documents. Defendants Lemon and Mackie denied Plaintiff's grievance at Step I. Plaintiff does not allege whether he appealed the denial of his grievance to Steps II and III.

Prior to the hearing, Defendant McDonald reviewed Plaintiff's legal documents outside of Plaintiff's presence. McDonald concluded that the documents could be used for felonious activity and refused to return Plaintiff's legal documents. On January 24, 2008, Defendant McKee

---

[3]According to Plaintiff's exhibits, Defendant Jenkins searched Plaintiff's cell. (*See* Ex. K, Page ID#70, docket #1-1.)

held an administrative hearing on the documents that were confiscated on January 10, 2008. McKee found that Plaintiff's documents could be used for illegal activity, and, thus, violated former MDOC Policy Directive 05.03.118.

On January 26, 2008, Plaintiff filed Grievance No. URF 08-01-0177-07A to appeal the decision of the January 24, 2008 hearing. Defendants Lemon and Mackie subsequently denied Plaintiff's Step I grievance. Plaintiff then appealed the grievance to Step II. Defendant Boynton denied Plaintiff's Step II grievance appeal. Plaintiff also sent a letter to Defendant Sherry regarding the disposal of his legal documents. Plaintiff claims that Defendant Sherry approved the acts and decisions of the MDOC staff through Defendant Boynton's Step II response. It is unknown whether Plaintiff appealed the denial of the grievance to Step III.

As to his seized documents, Plaintiff claims that he cannot duplicate his legal documents. Plaintiff argues that he was prevented from filing his direct appeal to the Michigan Supreme Court by the filing deadline of February 21, 2008. As a result, he was unable to file a meaningful petition for writ of habeas corpus. Plaintiff also alleges that he was prevented from appealing the Wayne County Circuit Court's decision in *Jones v. Mich. Parole Bd.*, Case No. 06-624825-CK, to the Michigan Court of Appeals.

Plaintiff argues that Defendants violated his First, Fourth, Fifth, Eighth, Ninth and Thirteenth Amendment rights, several articles of the United States Constitution, federal statutes and state law. Plaintiff requests declaratory and injunctive relief and monetary damages.

On August 24, 2011, the court issued an opinion stating:

> Defendants Caruso, Armstrong, Sherry, Boynton, Mackie, Dunton, McDonald, Lemon, McKee, Hough, Porter, (Unknown) Party and Michigan Department of Corrections will be dismissed on immunity grounds and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will

5

>also dismiss all of the claims against Defendants Jenkins, Beseau, Blamer and Sindles pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), other than the First Amendment retaliation and access-to-the-courts claims. The Court will serve the First Amendment retaliation and access-to-the-courts claims and state-law claims against Defendants Jenkins, Beseau, Blamer and Sindles.

*Jones v. Caruso, et. al.*, Opinion, docket #7, at 18. Therefore, Plaintiff's only remaining claims in this case are against Defendants Jeffrey Jenkins, Joseph Beseau, Donald Sindles, and Randall Blamer.

Presently before the court is the motion for summary judgment filed by Defendants Jeffrey Jenkins, Joseph Beseau, Donald Sindles, and Randall Blamer (docket #32). Plaintiff has filed a response (docket #35) and the matter is ready for decision. Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

6

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available

administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD.

The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.* at ¶ HH.

Plaintiff has previously filed Step I and Step II grievance appeals, but as of October 20, 2011, he had not filed any Step III grievance appeals (Defendants' Brief in Support of Motion for Summary Judgment, Exhibit A, docket # 33). Because Plaintiff did not pursue his grievances through step III, Plaintiff has failed to properly exhaust his available administrative remedies. The undersigned recommends that Defendants' motion for summary judgment be granted as no reasonable trier of fact could find other than for the Defendants.

In addition, the undersigned notes that it appears that one of Plaintiff's claims is barred by the statute of limitations. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir.1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98

9

F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[4]

Plaintiff's complaint asserts that Defendants violated his First Amendment rights on October 26, 2007 and on January 10, 2008 when his legal documents were seized and when plaintiff was searched upon entering the law library. Defendants argue that February 23, 2011–the date on which Plaintiff was granted in forma pauperis status by this Court–should be the filing date for determining whether Plaintiff's claims are barred by the statute of limitations. Plaintiff responds that the prison mailbox rule applies, and consequently, that February 17, 2011 should be the filing date.

Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Plaintiff states that he filed his complaint on February 17, 2011. For purposes of this opinion, the Court has given Plaintiff the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

Applying the prison mailbox rule, the undersigned concludes that February 17, 2011, is the filing date for determining whether Plaintiff's claims are barred by the statute of limitations.

---

[4] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

Plaintiff's claims arise from events that occurred on October 26, 2007 and January 10, 2008. As previously noted, the applicable statute of limitations is three years. Plaintiff knew or had reason to know of the injuries that are the basis of his action on the dates that the acts occurred. Plaintiff's complaint was filed more than three years after the October 26, 2007, claim arose. Therefore, Defendants are entitled to summary judgement for the claims arising from the events of October 26, 2007, on statute of limitations grounds.

Plaintiff's claims arising from the events of January 10, 2008 do not appear to be barred by the statute of limitations. See *Brown v. Morgan*, 209 F.3d 595 (6th Cir. 2000) (holding that a prisoner's civil rights action was tolled for the period during which his available state remedies were being exhausted). However, Plaintiff failed to properly exhaust his administrative remedies for this claim, so Defendants are nevertheless entitled to summary judgment on this claim.

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (Docket #32) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

**NOTICE TO PARTIES**: Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

       /s/ Timothy P. Greeley
      TIMOTHY P. GREELEY
      UNITED STATES MAGISTRATE JUDGE

Dated: July 30, 2012