UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RAMONE JONES,

        Plaintiff,                        Case No. 2:11-CV-65

v.                                           HON. GORDON J. QUIST

PATRICIA CARUSO, *et al.*,

        Defendants.
_____/

## MEMORANDUM OPINION AND ORDER

On July 30, 2012, the Magistrate Judge issued a Report and Recommendation (R & R) (Docket no. 47) recommending that this Court grant Defendants' Motion for Summary Judgment (Docket no. 32) because Plaintiff, Ramone Jones, failed to exhaust his available administrative remedies. On August 10, 2012, Plaintiff filed a timely Objection to the Report and Recommendation (Docket no. 51), to which Defendants responded. (Docket no. 54.)

When a party properly objects to any part of a magistrate judge's disposition, this Court must review the disposition *de novo*. Fed. R. Civ. P. 72(b)(3). After conducting a *de novo* review of the R & R, Plaintiff's objections, and the pertinent portions of the record, the Court concludes that the R & R should be rejected. However, the Court will grant Defendants' Motion for Summary Judgment on other grounds presented in Defendants' brief in support of the motion. (Docket no. 33.)

**I.    The Report and Recommendation Will Be Rejected**

The R & R recommends that the Court dismiss Plaintiff's claims for failure to exhaust available administrative remedies through the Michigan Department of Corrections (MDOC)

grievance process. The R & R relies upon on an affidavit from the Manager of the Office of Legal Affairs, Richard D. Russell. In his affidavit, Russell attests, "I have caused a search of the database relevant to step III grievance appeals filed by the plaintiff. Plaintiff has not filed any Step III Grievance appeals to date." (Docket no. 33-2, Page ID 219.) However, after Plaintiff's Objection, Defendants now concede that Russell's affidavit "contains some erroneous information" upon which the Magistrate unknowingly relied, and Plaintiff has exhausted the necessary grievance procedures. (Docket no. 54, Page ID 298.) Therefore, through no fault of the Magistrate Judge, this Court will reject the R & R. This Court will now address Defendants' alternative arguments presented in their Motion for Summary Judgment.

**II.     First Amendment Retaliation**

    **A.     Plaintiff's Allegations Arising from the Seizure of Legal Documents on October 26, 2007, Fail to State a Claim**

Plaintiff alleges that Defendant Jenkins violated Plaintiff's First Amendment rights when Jenkins seized Plaintiff's legal documents during a search of Plaintiff's cell on October 26, 2007. (*See* Docket no. 1, Page ID 16–17.) Plaintiff's First Amendment retaliation claim will be dismissed for failure to state a claim. To state a First Amendment retaliation claim, Plaintiff must allege that "(1) he engaged in protected conduct; (2) the defendant took an adverse action against him 'that would deter a person of ordinary firmness from continuing to engage in that conduct'; and (3) that the adverse action was taken (at least in part) because of the protected conduct." *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)); *see also* 28 U.S.C. § 1915(e)(2)(B) (a court shall dismiss a complaint at any time if it fails to state a claim on which relief can be granted).

Plaintiff's retaliation claim fails to state a claim for two reasons. First, Plaintiff does not allege that he engaged in any protected conduct before the October 26, 2007, search occurred.

2

Second, Plaintiff does not allege that Defendant Jenkins searched Plaintiff's cell or seized legal documents as a result of any protected conduct.

Moreover, even if Plaintiff did allege that Jenkins acted as a result of protected conduct, Defendants' Motion for Summary Judgment would be granted. First, Plaintiff does not offer evidence to show that Jenkins searched Plaintiff's cell or confiscated Plaintiff's materials because Plaintiff engaged in protected conduct. *See Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010) (stating that to survive summary judgment, a plaintiff must establish that a defendant's adverse actions were motivated, at least in part, by a plaintiff's protected conduct). Second, Jenkins has satisfied his burden to show that he would have confiscated Plaintiff's materials *regardless* of any protected conduct in which Plaintiff engaged. *Id.* ("If the prisoner can show that the defendants' adverse action was at least partially motivated by the prisoner's protected conduct, then the burden shifts to the defendants to show that they would have taken the same action even absent such protected conduct.") (citing *Thaddeus-X*, 175 F.3d at 399). Jenkins attests that he confiscated Plaintiff's material because he believe it to be contraband—specifically, "a threat to the security of the institution." (Docket no. 33-4, Page ID 229.) Plaintiff's complaint, which is properly considered an affidavit for purposes of the summary judgment motion, *see Miller v. Jones*, No. 10-5282, 2012 WL 2044366, at *1 (6th Cir. June 6, 2012), does not refute Jenkins's statement. *Hill*, 630 F.3d at 475 ("'[C]onclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a . . . claim.'") (quoting *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005)). Jenkins's statement that he acted regardless of protected conduct is also supported by the conclusion of an administrative hearing that the seized materials violated MDOC policy. *See Ruiz v. Bouchard*, 60 F. App'x 572, 574 (6th Cir. 2003) (finding plaintiff failed to state a viable retaliation claim where he was convicted of misconduct charges through a grievance process).

3

**B.      Plaintiff's Allegations Arising from the Seizure of Legal Documents on January 10, 2008, Fail to State a Claim**

Plaintiff also alleges that Defendant Jenkins violated Plaintiff's First Amendment rights when Jenkins seized Plaintiff's legal documents during a search of Plaintiff's cell on January 10, 2008. (*See* Docket no. 1, Page ID 22.)  Plaintiff's First Amendment retaliation claim does not state a claim upon which relief can be granted.  Among other things, Plaintiff must allege "that the adverse action was taken (at least in part) because of the protected conduct."  *Thomas*, 481 F.3d at 440.  Plaintiff does not allege that Plaintiff's prior protected conduct motivated Jenkins to search Plaintiff's cell on January 10, 2008.

Even if Plaintiff did state a claim, Defendants' motion for summary judgment would be granted.  Defendant Jenkins attests that he confiscated Plaintiff's materials because it appeared to be "contraband" and "a threat to the security of the institution."  (Docket no. 33-4, Page ID 229.)  In other words, Jenkins asserts that he would have taken the same action absent Plaintiff's conduct.  *See Hill*, 630 F.3d at 475 (citing *Thaddeus-X*, 174 F.3d at 399).  Plaintiff's response is to rely on his sworn complaint[1] and attached exhibits.  (Docket no. 36 at Page ID 242.)  However, Plaintiff's complaint and exhibits do not contain evidence sufficient for a reasonable jury to find in favor of Plaintiff.  *See Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001) (stating that no genuine issue of material fact exists "unless a reasonable jury could return a verdict for the nonmoving party").  In fact, Plaintiff's affidavit and exhibits are replete with evidence that Defendant Jenkins did not act with a retaliatory motive.  For example, the Administrative Hearing Report found that Plaintiff's paperwork violated MDOC policy Directive 05.0.118 paragraph HH

---

[1] Since Plaintiff notarized his complaint, it serves as an affidavit for purposes of summary judgment.  *See Miller v. Jones*, No. 10-5282, 2012 WL 2044366, at *1 (6th Cir. June 6, 2012).

(prisoner mail) because it advocates or promotes the violation of state or federal laws.[2] (Docket no. 1-1, Page ID 65.) Again, this strengthens Jenkins's contention that his reason for confiscating materials was not retaliation. *See Ruiz*, 60 F. App'x at 574.

### C. The Court Will Grant Summary Judgment for Defendants on Plaintiff's Allegations Arising from a Denial of Entry into the Law Library on January 10, 2008

Plaintiff also alleges that Defendants violated Plaintiff's First Amendment rights when Jenkins, in conjunction with Defendants Blamer, Sindles, and Beseau, stopped Plaintiff while he was on his way to the law library. Plaintiff alleges that Defendants searched Plaintiff's person and Defendants noticed that Plaintiff possessed paperwork for a civil complaint against Defendant Jenkins. (*See* Docket no. 1, Page ID 22.) Defendants then refused to allow Plaintiff to proceed to the law library and confiscated his legal documents.

Plaintiff's retaliation claim arising from January 10, 2008 does state a claim. As distinguished from the preceding First Amendment retaliation claims, Plaintiff specifically alleges that Defendants had a retaliatory motive for denying library access and confiscating his documents:

---

[2] In *Jones v. Mich. Dep't of Corr.*, No. 2:05-CV-72817, 2006 WL 2805643 (E.D. Mich. Sept. 28, 2006), the district court issued a preliminary injunction to enjoin defendants from enforcing the former prisoner mail policy, MDOC Policy Directive 05.03.118, paragraph HH(23). The former policy prohibited prisoners from receiving:

> Mail regarding actions that can be taken under the Uniform Commercial Code (UCC) which could be used to harass or threaten another individual, including the filing of a lien against the individual. This does not include legal materials which set forth the statute or provide a scholarly legal analysis of the UCC.

MDOC Policy Directive 05.03.118, ¶ HH(23). The Sixth Circuit affirmed the issuance of the preliminary injunction in *Jones v. Caruso*, 569 F.3d 258, 278–79 (2009). On September 14, 2009, MDOC modified Policy Directive 05.03.118 to remove paragraph HH(23). It then added paragraphs MM(3) and (11). Paragraph MM(3) prohibits mail advocating or promoting the violation of state or federal laws, such as "the filing of a false or fraudulent UCC financing statement in violation of MCL [§] 440.9501." MDOC Policy Directive 05.03.118, ¶ MM(3). Paragraph MM(11) prohibits mail that encourages or provides instruction in the commission of a criminal activity, including the "filing of a false or fraudulent UCC lien." *Id*., at ¶ MM(11). As a result of the changes to the mail policy, the district court removed the preliminary injunction and dismissed the case. *See Jones*, Case No. 2:05-CV-72817, Order & J., Docket nos. 113, 114 (E.D. Mich. Aug. 31, 2010).

Defendants had just discovered that Plaintiff had filed a civil complaint against Jenkins.[3] However, the Court will grant Defendants' motion for summary judgment on this claim because the Court finds there is no genuine issue of material fact in dispute.

Summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact" regarding an essential element of the non-moving party's case and the moving party is entitled to judgment as a matter of law. *See Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005) (citing Fed. R. Civ. P. 56(c)). Genuine issues are those which could persuade a reasonable person to return a verdict for the non-moving party. *Id.* The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S. Ct. 2505, 2512 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Emps.*, 407 F.3d 784, 787 (6th Cir. 2005). This Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1355–56 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Defendants have satisfied their burden of providing a non-retaliatory reason for their conduct on January 10, 2008 that supports Defendants' assertion that they would have taken the same action absent Plaintiff's protected conduct. *See Hill*, 630 F.3d at 475 (citing *Thaddeus-X*, 174 F.3d at 399). In an affidavit, Jenkins attests that Resident Unit Officers (RUOs) conduct random searches of

---

[3] According to court records, Plaintiff had recently filed a federal civil rights action naming Jenkins as a party. *See Jones v. Mich. Dep't of Corr. et al.*, No. 2:07-CV-239, Complaint, Docket no. 1 (W.D. Mich.) (filed Dec. 3, 2007).

prisoners going to the law library to "make sure prisoners are not bringing material to the law library other than law material," pursuant to MDOC policy. (Docket no. 33-4, Page ID 231; *see also* MDOC Policy Directives 05.03.110 & 05.03.115.) At the time of the search, Jenkins states, the library staff noticed that many prisoners were in the library with personal items, so "the officers were instructed to search prisoners prior to them leaving the unit for their callout to the library. This is still the current practice." When Defendants found Plaintiff in possession of items that appeared to violate the mail policy, Defendants confiscated the materials, sent them to an inspector, and denied Plaintiff access to the law library. (*Id.* at 230.) A grievance investigator later found Defendants' actions were taken in accordance with MDOC policy. (*Id.* at 231.; Docket no. 1-1 ex. I.) Moreover, Jenkins states that he does not recall noticing any paperwork bearing his name or the names of other RUOs. (Docket no. 33-4, Page ID 230.) In their respective affidavits, Defendants Beseau and Sindles also attest that they searched Plaintiff and denied him access to the law library in accordance with MDOC policy. (Docket nos. 33-5 and 33-6.) They further state that they do not recall seeing paperwork regarding a lawsuit against Jenkins. (*Id.*) Jones's complaint and Response to Defendants' Motion for Summary Judgment, which are properly considered affidavits for purposes of the summary judgment motion, do not refute Defendants' non-retaliatory justifications for their actions. Rather, Plaintiff's argument appears to be that the applicable MDOC policies—promulgated by former MDOC Director, Patricia L. Caruso—are the greater reason that RUOs have searched and seized Plaintiff's paperwork. Jones argues that the mail and law library access policies should be changed. This does not negate that Defendants had non-retaliatory reasons for searching and seizing paperwork from Plaintiff and denying Plaintiff law library access on January 10, 2008. Moreover, Defendants' statements that they acted regardless of Plaintiff's protected conduct is supported by the conclusion of an administrative hearing that Plaintiff's materials violated MDOC policy. *See Ruiz*, 60 F. App'x at 574.

7

**III.    Denial of Access to the Courts**

    **A.    Plaintiff's Allegations Arising from the Seizure of Legal Documents from Plaintiff on October 26, 2007, and January 10, 2008, Fail to State a Claim**

Plaintiff also alleges that Defendant Jenkins's seizure of legal materials from Plaintiff's cell on October 26, 2007, and January 10, 2008, violated Plaintiff's fundamental First Amendment right to access the courts. Plaintiff's allegations will be dismissed for failure to state a claim.

It is well-established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 354, 116 S. Ct. 2174, 2181 (1996); *Bounds v. Smith*, 430 U.S. 817, 821, 97 S. Ct. 1491, 1494 (1977). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). They must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, and may not erect barriers that may impede an inmate's access to the courts. *Id.* (citing *Bounds*, 430 U.S. at 824–28, 97 S. Ct. at 1496–98 and *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)). However, a plaintiff's fundamental right to access to the courts is not a free-standing right to a law library, litigation tools, or legal assistance. *Lewis*, 518 U.S. at 351, 116 S. Ct. at 2180. Further, the right may be limited by legitimate penological interests, such as maintaining security and preventing fire or sanitation hazards. *See, e.g.*, *Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. Mar. 26, 1992) (upholding seizure of prisoner's legal property where property size limits were justified by fire, safety, and sanitation hazards); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985) (upholding prison policies restricting the accumulation of personal property, including legal materials, in order to maintain security and prevent health and fire hazards). As the Supreme Court has held, "such a standard is necessary if 'prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.'" *Turner v. Safley*, 482 U.S. 78,

89, 107 S. Ct. 2254, 2261–62 (1987) (quoting *Jones v. North Carolina Prisoners' Union*, 433 U.S.119, 128, 97 S. Ct. 2532, 2539 (1977). "Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Id.*

In order to state a viable claim for interference with access to the courts, a plaintiff "must show both that defendants deprived him of access to legal papers or other materials needed to present his case in a meaningful fashion and that *this* deprivation resulted in some quantum of detriment to pending or contemplated litigation." *Stockenauer v. DeLeeuw*, 57 F.3d 1070, 1995 WL 331494, at *4 (6th Cir. June 2, 1995) (emphasis added). This requires a plaintiff to allege an "actual injury" resulting from the lack of specific legal materials. *See Lewis*, 518 U.S. at 349, 116 S. Ct. at 2179; *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). "In claiming denial of access to the courts, a plaintiff must claim with specificity how he was adversely affected or how the litigation was prejudiced by the confiscation." *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). An inmate cannot show injury when he still has access to his legal materials by request, *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996), when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or where he could have received or retained the legal materials by complying with the limits on property, *see, e.g.*, *Wagner*, 1985 WL 14025, at *1; *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993) (upholding confiscation of legal documents where inmate could have kept excess property if he purchased a new footlocker).

In his complaint, Plaintiff alleges the following facts: Defendant Jenkins seized "legal documents" from Plaintiff's cell on October 26, 2007, and January 10, 2008, and all four Defendants

9

confiscated Plaintiff's "legal documents" on Plaintiff's person on the way to the law library on January 10, 2008. (Docket no. 1, Page ID 16–23.) Plaintiff also states, "some of the documents were relevant to Plaintiff's lawsuit and appeal" and Plaintiff informed an administrative hearing officer that not all confiscated documents were Uniform Commercial Code documents and were "needed for appeals." (*Id.* at 17, 19.) Plaintiff also indicates the documents were not seized or confiscated due to property limits, so he was not allowed to elect to retain them in lieu of other property. (*Id.* at 25.) Additionally, Plaintiff states that he was unable to produce, reproduce, or replicate the documents, but does not explain the reason why. (*Id.*) Finally, Plaintiff claims that he "was prevented by Defendants [sic] actions from filing an appeal to the Michigan Supreme Court" but does not indicate how the seizure of his paperwork prevented appeal or otherwise caused actual injury. (*Id.*)

The Court finds that, without additional details, Plaintiff's factual allegations are insufficient to state a claim for denial of meaningful access to the courts. Plaintiff concedes that he had twelve months to file his appeal, due on February 21, 2008, but fails to indicate which legal documents were seized, which documents were pertinent to his appeal, how they related to his appeal, how the seizures prevented his appeal, or why he could not replicate the documents.[4] (Docket no. 1-1, Page ID 25.)

Even if Plaintiff had stated a claim, this Court would grant Defendants' motion for summary judgment because Defendants provide legitimate penological reasons for confiscating Plaintiff's documents. In his affidavit, Defendant Jenkins attests that the documents "posed a security threat." (Docket no. 33-4 (Jenkins affidavit); *see also* Docket no. 1-1 (contraband removal record and

---

[4] The Court notes that the Contraband Removal Record is regrettably vague ("1. A stack of paperwork approx. 4" tall that appears to be a threat to the security of the institution and in violation of the mail policy."). (Docket no. 1-1, Page ID 33). However, it is Plaintiff's burden to establish the relationship between the seized items and interference with Plaintiff's right to access the courts.

10

administrative review documents); MDOC Policy Directive ¶ MM (mail policy).) Plaintiff's exhibits attached to his complaint also demonstrate that an administrative review of the seizures found Defendants' actions did not violate MDOC policy or Plaintiff's rights. Based on the record, there is no genuine issue of material fact in dispute.

### B. Plaintiff's Allegations Arising from a Denial of Entry into the Law Library on January 10, 2008, Fail to State a Claim

Finally, Plaintiff alleges that Defendants' refusal to allow Plaintiff to access the law library on January 10, 2008, violates Plaintiff's right to access the courts. Plaintiff's allegations fail to state a claim for two reasons. First, Plaintiff does not allege routine denial of access to the law library. Rather, Plaintiff alleges denial of access for purposes of this claim on January 10 and "at a minimum one other occasion." Standing alone, this does not amount to denial of access to the courts. Restricted law library access is not equivalent to interference with access to the courts. *See, e.g.*, *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985) (finding no constitutional right to a minimum number of hours of law library access, as long as access is "reasonable and adequate"); *see also Lewis v. Casey*, 518 U.S. 343, 351, 116 S. Ct. at 2180 (a second-rate law library does not in itself establish actual injury). Second, Plaintiff does not specifically allege a causal connection between his inability to access the law library on January 10, 2008, and his failure to file a timely appeal in his criminal case. Therefore, the Court will dismiss this claim for failure to state a claim for which relief can be granted.

### IV. Motion for Reconsideration

Plaintiff has also filed a Motion for Reconsideration. (Docket nos. 55 & 58; 7)[5] Plaintiff would like the Court to reconsider its Opinion and Order of August 24, 2011, that dismissed several

---

[5] Plaintiff's motion has been filed twice. His motion and supporting brief filed on August 27, 2012 (Docket nos. 55 & 56), are identical to the motion and supporting brief filed on August 28, 2012. (Docket nos. 58 & 59.)

11

claims against Defendants working in supervisory positions within MDOC. The Court will deny Plaintiff's motion. To prevail on a motion for reconsideration, Plaintiff must "not only demonstrate a palpable defect by which the Court and the parties have been misled, but [must] also show that a different disposition of the case must result from a correction thereof." *See* W.D.Mich. LCivR 7.4(a). A motion to reconsider or amend judgment may not be used to simply rehash rejected arguments or to introduce new arguments. *See, e.g.*, *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("Thus, parties should not use [motions to reconsider] to raise arguments which could, and should, have been made before judgment issued.").

In the present case, the Court finds that Plaintiff's brief in support of his motion for reconsideration merely elaborates on Plaintiff's original arguments for supervisory liability of previously dismissed Defendants. Plaintiff does not argue that there was a palpable defect or other grounds for reconsideration. Thus, the Court will deny Plaintiff's motion.

**V.     Motion to Amend Complaint**

On September 17, 2012, Plaintiff also moved to amend his complaint to "detail what exactly each named Defendant did and how each was responsible for violating Plaintiff's constitutional rights." (Docket no. 63, Page ID 336). Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleading only with the court's leave and that the "court should freely give leave when justice so requires." While the court should freely grant amendments, the court may deny a plaintiff's leave to amend a complaint "when the proposed amendment would be futile." *See Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006). In exercising discretion to grant leave to amend, a court may consider undue delay, bad faith or dilatory motive, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962); *see also* 3 Moore, Federal Practice (3d ed. 2011) § 15.15 ("An amendment is futile if it merely restates the same facts as the original

complaint in different terms, reasserts a claim on which a court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.").

After careful review of Plaintiff's brief in support of his Motion to Amend, the Court will deny the motion as futile. Plaintiff's proposed amended complaint fails to adequately allege any claims other than the aforementioned First Amendment retaliation and access to court claims. Moreover, the Court notes the delayed request for amendment by Plaintiff. Plaintiff filed his initial complaint on February 17, 2011,[6] and the Court issued an initial opinion on August 24, 2011. Plaintiff did not file a Motion to Amend until September 17, 2012, after Defendants' Motion for Summary Judgment and an initial Report and Recommendation by the Magistrate Judge. Plaintiff does not provide an explanation for the delay.

## VI.   Motion for Sanctions

Plaintiff also petitions the Court for sanctions pursuant to Federal Rule of Civil Procedure 11(c). Plaintiff brings the motion on the basis of the "erroneous information" (Docket no. 54, Page ID 298) contained in Richard Russell's affidavit. (Docket no. 33-2, Page ID 219.)

Pursuant to the 1993 amendments to Rule 11, Rule 11 now provides a "safe harbor" period, within which the offending party must be afforded an opportunity to withdraw the inappropriate document. *See Ridder v. City of Springfield*, 109 F.3d 288, 294–95 (6th Cir. 1997). The "safe harbor" provision states:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

---

[6] According to Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Plaintiff states that he filed his complaint on February 17, 2011. For purposes of the opinion, the Court has given Plaintiff the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008).

Fed. R. Civ. P. 11(c)(2). Thus, "sanctions under Rule 11 are only appropriate when a party is made aware of the offending document as filed with the court and has an opportunity to withdraw the filing." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 446 (6th Cir. 2006).

The Court has reviewed Plaintiff's motion and brief in support of his motion and notes that Plaintiff noted the erroneous information on August 10, 2012 in his Objection to the Report and Recommendation. Defendants "appropriately corrected" the record on August 22, 2012, twelve days later. Plaintiff did not serve a "safe harbor" notice letter on Defendants prior to filing his request for sanctions with the Court. Thus, it appears that Plaintiff failed to afford Defendants the necessary safe harbor period. If Plaintiff seeks sanctions, he must follow this rule. Therefore, the Court denies Plaintiff's Motion for Sanctions.

**VII. Motion for Relief from Order**

Plaintiff also requests relief from the Court's order to proceed in forma pauperis. (Docket no. 38.) Specifically, Plaintiff requests that the court raise the $10.00 minimum amount in a prisoner's account at which a prisoner must make monthly payments toward court filing fees. The calculation of filing fee installments is governed by statutory formula. *See* 28 U.S.C. § 1915(b)(2). Therefore, the Court lacks the discretion to alter the $10.00 minimum amount and Plaintiff's motion will be denied.

**VIII. Motion for Immediate Consideration**

Finally, Plaintiff moves for immediate consideration of his Motion to Amend Complaint. For the aforementioned reasons, the Court will dismiss the motion as moot. Therefore,

**IT IS HEREBY ORDERED** that the Magistrate Judge's Report and Recommendation (Docket no. 47) issued on July 30, 2012 is **REJECTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Docket no. 32) is **GRANTED** for all claims.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Relief from Order, Motion for Reconsideration, Motion to Amend Complaint, and Motion for Sanctions. (Docket nos. 38, 48, 55 & 63) are **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Immediate Consideration and Motion Regarding Plaintiff's Financial Demand (Docket nos. 45 & 65) are **DISMISSED**.

A separate judgment will issue.


Dated: September 27, 2012                                        /s/ Gordon J. Quist
                                                                             GORDON J. QUIST
                                                                   UNITED STATES DISTRICT JUDGE